1    AARON M. CLEFTON, Esq.  (SBN 318680)
     REIN & CLEFTON, Attorneys at Law
2    1423 Broadway #1133
     Oakland, CA  94612
3    Telephone:  510/832-5001
     Facsimile:   510/832-4787
4    info@reincleftonlaw.com

5    Attorneys for Plaintiff
     JUSTIN HAMMOND

6

7                    UNITED STATES DISTRICT COURT

8                    NORTHERN DISTRICT OF CALIFORNIA

9

10   JUSTIN HAMMOND                    CASE NO.
                                       Civil Rights
11          Plaintiff,
                                       COMPLAINT FOR PRELIMINARY AND
12                                     PERMANENT INJUNCTIVE RELIEF AND
                                       DAMAGES:
13      v.
                                       1.  Violations of Americans with Disabilities Act
14                                         of 1990 (42 U.S.C. § 12101 *et seq.*)

15   BAYSIDE MARIN, INC.               2.  Violation of the California Unruh Act (Cal.
                                           Civil Code §§ 51 and 52)
16
                                       3.  Violation of the California Disabled Persons
17          Defendant.                     Act (Cal. Civil Code § 54 *et seq.*)

18                                     DEMAND FOR JURY TRIAL

19          Plaintiff JUSTIN HAMMOND complains of Defendant BAYSIDE MARIN, INC., and

20   alleges as follows:

21          1.     **INTRODUCTION:**  Defendant deprived disabled Plaintiff the use of his service

22   dog during his stay at Bayside Marin Treatment Center. Plaintiff suffers generally from severe

23   anxiety, which is why he uses a service dog to alert him prior to the onset of a panic attack. When

24   Plaintiff was grieving the loss of a longtime friend and colleague, the grief sent him into a spiral

25   of depression and substance abuse. He desperately needed professional help and rehabilitation

26   services. On December 29, 2023, in this vulnerable state, Plaintiff went to the Bayside Marin

27

28

                                       1

1   Treatment Center located at 157 Bayview Drive, San Rafael, California, to begin a seven day stay
2   at the facility to receive treatment for alcohol addiction.

3        2.      Prior to agreeing to stay at this treatment center, Plaintiff had received assurances
4   from Defendant that he would be allowed to be accompanied by his service dog Dax after he had
5   completed the initial 72-hour detox period of his stay at Bayside Marin. Reluctantly, Plaintiff
6   agreed.  What helped him get through this difficult and physically painful withdrawal and
7   detoxification period was knowing he would be reunited with Dax afterward.  However, once
8   Plaintiff had completed the 72-hour detox period, Defendant refused to allow his partner to bring
9   Dax to the facility to assist Plaintiff for the remainder of his stay.  Defendant did so without
10  asking any questions about Dax, his tasks, or their relationship with Plaintiff's disability, or
11  making any individualized assessment of whether it was reasonable to allow Dax at the facility.

12       3.      Despite repeated requests from Plaintiff to be allowed access to his service dog to
13  several different employees and managers, Defendant categorically refused to allow Plaintiff to
14  use Dax. This included a decision by the CEO of the company, Mark Sawyer, that Dax was not
15  welcomed to be with Plaintiff and Plaintiff was not allowed to use him. Ultimately, Plaintiff had
16  to cut his stay at Defendant's facility short because of his lack of access to his service dog.  Both
17  leaving Bayside Marin Treatment Center early and the lack of access to his service dog hampered
18  Plaintiff's recovery process.  The whole experience was difficult and embarrassing for Plaintiff,
19  and he felt unsafe not being allowed to have Dax accompany him during his recovery. It also
20  damaged his ability to bond with his service dog for several days.

21       4.      Bayside Marin Treatment Center in San Rafael, California, is conveniently located
22  for Plaintiff, and the facility is covered by his health insurance.  Should Plaintiff need the services
23  of a recovery center in the future, he would like to return to the Bayside Marin to receive
24  treatment, but he cannot do so until the policies of the Bayside Marin are made accessible to
25  disabled individuals who use service dogs, including revision of their service dog policies and
26  necessary employee training and/or re-training.  He has brought this lawsuit to force Defendant to
27  change its discriminatory and illegal policies and compensate him for refusing to allow him to
28  access to his service dog during his treatment.  Plaintiff seeks an injunction to protect the rights of

all disabled persons, including Plaintiff, when accompanied by a qualified service dog at Bayside Marin Treatment Center.

5.     **JURISDICTION:**  This Court has jurisdiction of this action pursuant to 28 USC sections 1331 and 1343.  This Court has jurisdiction over the claims brought under California law pursuant to 28 U.S.C. § 1367.

6.     **VENUE:**  Venue is proper in this court pursuant to 28 USC section 1391(b) and is proper because the real property which is the subject of this action is located in this district and that Plaintiff's causes of action arose in this district.

7.     **INTRADISTRICT:**  This case should be assigned to the San Francisco/Oakland intradistrict because the real property which is the subject of this action is located in this intradistrict and Plaintiff's causes of action arose in this intradistrict.

8.     **PARTIES:**  Plaintiff Justin Hammond is a "qualified" disabled person who uses the assistance of a service dog for mobility.  Plaintiff suffers from generalized anxiety which can lead to acute episodes of panic in situations which are stressful for Plaintiff such as when he is socializing with people or when he is in crowds.  In such situations, Plaintiff experiences symptoms such as sweating, body shakes, and a significant rise in blood pressure.  Plaintiff relies upon his service dog, a greyhound named "Dax," to assist him by alerting him when his anxiety and panic levels are rising so that Plaintiff can employ tactics that he has learned to calm himself or if he is unable to calm himself, he can take his prescription medicine which alleviates his symptoms.  Dax has been trained to walk on Plaintiff's left side, and when Dax detects signs that Plaintiff is starting to panic, Dax will nudge Plaintiff on his left thigh. If Plaintiff does not immediately respond to Dax's nudge and begin calming down, Dax is trained to nudge him on the left thigh again.  If Plaintiff continues to ignore Dax's nudges, then Dax is trained to paw at Plaintiff until Plaintiff calms down or Plaintiff takes his medication.  Plaintiff personally trained Dax to assist him with the tasks he performs with the assistance of his therapist and online resources for training service dogs.  Plaintiff and Dax have trained extensively so that Dax can provide Plaintiff with the specific assistance he needs. Plaintiff is a qualified person with a disability as defined under federal and state law.  42 U.S.C. § 12102, 29 U.S.C. § 705(9)(B), and

California Government Code § 12926(1).

9.      Defendant BAYSIDE MARIN, INC., is and was at all times relevant to this Complaint the owner, operator, lessor and/or lessee of the subject facility/business located at 157 Bayview Drive, San Rafael, California known as the Bayside Marin Treatment Center.

10.      Bayside Marin Treatment Center is a place of "public accommodation" and a "business establishment" subject to the requirements *inter alia* of multiple categories of 42 U.S.C. section 12181(7) of the Americans with Disabilities Act of 1990, of California Civil Code sections 51 *et seq.*, and of California Civil Code sections 54 *et seq.*

11.      **FACTUAL STATEMENT:** Plaintiff Justin Hammond has been working with his service dog Dax for over eight months.  Dax is a greyhound who was individually trained to be a service dog.  Plaintiff has also trained and continues to train Dax to serve his specific needs throughout their relationship.  Dax is specifically trained to alert Plaintiff to the onset of anxiety symptoms so that he can use techniques to calm himself or take his prescribed medication. Dax is also trained to create space between Plaintiff and other individuals when he is in a crowd.

12.      This training involved step-by-step practices.  For example, to train Dax to alert Plaintiff of a panic attack, Plaintiff would simulate the symptoms of a panic attack, Plaintiff would reward Dax with treats, and verbal and touch rewards, when Dax would nudge him.  He then would move to reward Dax only when the nudge was on a particular location of Plaintiff's body.  Plaintiff routinely spent an hour a day minimum training Dax from the time he was eight weeks old. Dax was fully house broken at 6 months old, two months prior to the incident described in this complaint.

13.      Dax is a working dog; he is not a pet.  Plaintiff and Dax have trained extensively together, and they supplement that training daily.  Plaintiff takes Dax everywhere with him in public.  It is important they stay together as much as possible because (a) Dax provides important services for Plaintiff; and (b) it is part of the training and bonding requirement that they be together constantly to maintain their bond.  With few exceptions where Plaintiff goes, Dax goes.

14.      In late December of 2023, in the wake of the unexpected death of a friend and boss of over five years, which caused him to lose his job, Plaintiff determined that he had an alcohol

1    dependency issue, and he decided to stop drinking.  On December 28, 2023, around 10 pm,

2    Plaintiff went to the emergency room for treatment of symptoms of alcohol withdrawal, including

3    seizures.  He received treatment in the emergency room at Kaiser Hospital which included IV

4    fluids and medication to stop the seizures and help his anxiety. ER doctors diagnosed Plaintiff

5    with alcohol withdrawal, and they informed him that he should detox at a special treatment

6    center. Plaintiff was assigned a caseworker, Cristian, to assist him in navigating recovery

7    assistance options through his health insurance.

8         15.     Plaintiff was discharged from the hospital around 5 am on December 29, 2023, and

9    he went home to wait for his caseworker to contact him regarding the next step in his treatment.

10        16.     Cristian contacted Plaintiff in the morning on December 29, 2023, to discuss

11   possible treatment centers where he could begin his recovery.  During their initial conversation,

12   Plaintiff told his caseworker that he worked with a service dog, so he needed to be admitted to a

13   recovery facility who would allow him to bring his service dog, Dax, with him.  Cristian told

14   Plaintiff that he understood Plaintiff's need for Dax, and he would check with different facilities

15   about availability and service dog policies.

16        17.     Later in the day on December 29, 2023, Cristian called Plaintiff to discuss

17   potential options he had found for Plaintiff. Cristian told Plaintiff that many places he checked

18   with did not have space available for him or would not allow service dogs at all.  However,

19   Cristian informed Plaintiff that a facility called Bayside Marin Treatment Center had a room

20   available and would allow him to be accompanied by his service dog after he has completed a 72-

21   hour detox period. Plaintiff was approved for a seven day stay at Bayside Marin Treatment

22   Center. Plaintiff agreed to accept the terms offered by Defendant, and he accepted the space at

23   Bayside Marin Treatment Center for seven days of treatment.

24        18.     On the evening of December 29, 2023, Plaintiff's partner drove him and Dax from

25   their home in San Francisco to Bayside Marin Treatment Center. When they arrived, Plaintiff saw

26   that the facility was gated.  He entered the code to the gate that he had been given, and they drove

27   up to the entrance of the facility.  Plaintiff's partner and Dax accompanied Plaintiff inside the

28   facility to check-in. They approached the check-in area, and Defendant's employees provided

Plaintiff with forms to complete. Plaintiff provided Defendant's employee with some paperwork about his service dog Dax, including a letter from his therapist identifying Dax as a service dog and Dax's veterinarian records showing that his vaccinations were up to date. Plaintiff sat on a nearby couch in the lobby area to complete the forms. Sensing Plaintiff's anxiety, Dax sat on Plaintiff's lap while he completed the in-take forms.

19.     Defendant's employee asked Plaintiff to accompany her to an exam room. Plaintiff was not allowed to take Dax with him, so he left Dax in the lobby with his partner. Defendant's employee took Plaintiff's vitals and interviewed Plaintiff. She also administered a drug test.  After the initial exam was completed, Plaintiff returned to the lobby. He sat back down on the couch, and Dax again climbed into his lap.

20.     Eventually, a nurse came out with a cell phone and told Plaintiff that the doctor would like to speak with him.  The doctor asked Plaintiff how he was feeling, and Plaintiff told the doctor that he was not feeling very well and that he felt like he was going to have a seizure. The doctor said that they would get him some medicine to help him feel better. This was the only time he spoke with a doctor for the entirety of his stay, and never saw a doctor in person.

21.     After he hung up with the doctor, Plaintiff said good-bye to his partner and Dax.  It was an emotional farewell for Plaintiff, especially with Dax. Defendant's staff reassured Plaintiff that he would be reunited with Dax after the 72-hour detox period. Plaintiff's partner and Dax left, and Defendant's staff showed Plaintiff to his room.

22.     At no time during Plaintiff's initial contact with Defendant's staff did anyone ask Plaintiff any questions about Dax, including the questions legally allowed by law regarding whether Dax was a service animal, and what tasks was he trained to do for Plaintiff.  Dax was perfectly behaved during the check-in process, and he performed the tasks he was trained to do to calm Plaintiff during a stressful time. The only discussion that Plaintiff and Defendant's staff had about Dax was to confirm that he would be able to return to Bayside Marin Treatment Center to be with Plaintiff after the 72-hour detox period. Despite Defendant's employees not asking about Dax, Plaintiff volunteered that he was a service dog and trained to perform tasks for his disability.

23.     Plaintiff endured the 72-hour detox period on December 29, December 30, and

December 31, 2023, as best he could. He comforted himself through the withdrawals with the fact he would be reunited with Dax and his partner soon.  His time was filled mainly with sleeping, waking to eat meals and take his medication.  The detox period was fairly uneventful for Plaintiff other than the physical discomfort, and he is unaware of any issues with Defendant's facilities or staff during that time. The facilities themselves contained outdoor trails that were open for Plaintiff to walk at any time.  It was not a closed or locked facility. Plaintiff had been assigned a double room all to himself.  Nothing about the configuration of the grounds, his room, or any interaction with others at the facility would have prevented Plaintiff from caring for Dax independently nor would Dax's presence otherwise interfere with Plaintiff's treatment or the treatment of others.

24.     On Sunday, December 31, 2023, Plaintiff spoke with clerical staff at Bayside Marin Treatment Center about when he should tell his partner to bring Dax to the facility for him. Defendant's employees told Plaintiff that Dax would not be allowed to stay with him even after the 72-hour detox period.  Plaintiff pushed back on Defendant's staff and asked why they would not allow Dax to accompany him for the remainder of his treatment at Bayside Marin, but none of Defendant's employees provided an adequate answer to Plaintiff.  At no time did any employee tell Plaintiff Dax was not allowed because of Dax's behavior, interference with Plaintiff's or others' rehabilitation treatment, or that the grounds would not allow for a dog.

25.     Plaintiff became distraught at hearing this news from Defendant's employees. He began to exhibit symptoms of a panic attack, including sweating, shaking, and increased blood pressure.  Plaintiff demanded to get his cell phone back from Defendant which he had surrendered per Defendant's request during the 72-hour detox period.  Defendant returned his cell phone, and Plaintiff immediately called his partner to discuss the situation. His partner helped him calm down a bit, and he assured Plaintiff he would work on his end to try to and find out why Defendant was refusing Plaintiff access to his service dog.

26.     On Monday, January 1, 2024, Plaintiff spoke to everyone who would speak to him at Defendant's facility about getting Dax allowed to be with him at the facility. First, he spoke to a counselor who informed Plaintiff that Defendant would not allow Dax to be with him at

Bayside Marin Treatment Center because Dax "was not professionally trained." Plaintiff told Defendant's counselor that it is contrary to the ADA to require service dogs to be professionally trained.  Defendant's counselor responded that there was nothing that he could do.

27.     After his conversation with Defendant's counselor, Plaintiff texted Defendant's manager to inform her that Defendant was breaking the law by not allowing his service dog to accompany him in the facility as previously promised.  Specifically, Plaintiff provided Defendant's manager with a letter from his therapist and a letter from his veterinarian both of whom confirmed that Dax is a service dog.  Plaintiff also sent the manager excerpts from an FAQ from ADA.gov which specifically states that "Service animals are not: required to be certified or go through a professional training program." In response to these texts, the manager informed Plaintiff that under no circumstances would Dax be allowed to stay with him at the facility. Further, *Defendant's manager told Plaintiff that she had spoken with Defendant's CEO, Mark Sawyer, and he had said that Dax was not allowed to come to the Bayside Marin Treatment Center*.

28.     Plaintiff asked to speak with Defendant's CEO personally, so that he could explain the situation.  Defendant's manager told Plaintiff that would not be possible.

29.     Plaintiff then spoke with Defendant's Director of Clinical Services.  Plaintiff again asked if Dax could accompany him for the rest of his stay at Bayside Marin Treatment Center. Defendant's Director of Clinical Services told Plaintiff that he would not be able to have Dax at the facility.  She was very short with Plaintiff and did not provide him with any explanation of why Dax was being excluded from Bayside Marin Treatment Center.

30.     Plaintiff also spoke to a counselor who told Plaintiff that Dax was not allowed to accompany him at Bayside Marin Treatment Center.  The counselor did not provide any explanation of why Dax was being excluded.  However, she did return to speak with him later, and she informed him that she had contacted another treatment facility (owned by the same group) that *would allow* him to have Dax with him for the remainder of his treatment.  Ultimately, Plaintiff decided that moving to a new facility was not feasible for him due to the distance of the facility from his home and the stage of treatment he was in.  Additionally, he found it insulting

and suspect that Defendant would not allow him to have his service dog at the Bayside Marin Treatment Center but would allow him to have his service dog at a different facility it owned.

31.     Ultimately, Plaintiff decided to leave Bayside Marin Treatment Center on January 2, 2024, because Defendant would not allow him to have Dax with him.  Plaintiff's partner picked him up and took him back to their home in San Francisco. Plaintiff left Defendant's facility three days earlier than his insurance had approved him for and earlier than he wanted to.  This was detrimental to his recovery, but he did so because not being allowed to be accompanied by his service dog, Dax, at Defendant's facility was even more detrimental to his general health, safety, and his recovery.

32.     If or when Plaintiff has a need for addiction treatment in the future, Plaintiff wants to return to Bayside Marin Treatment Center, but only *after* Defendant has implemented proper service animal policies and training of their staff.  Plaintiff is deterred from returning to the treatment center until these policies and training are in place.

**FIRST CAUSE OF ACTION:**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990**
**(42 USC §§ 12101 *et seq.*)**

33.     Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the factual allegations contained in Paragraphs 1 through 32, above, and incorporates them herein by reference as if separately repled hereafter.

34.     In 1990 Congress passed the Americans with Disabilities Act after finding that laws were needed to more fully protect "some 43 million Americans with one or more physical or mental disabilities; that historically society has tended to isolate and segregate individuals with disabilities;" that "such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem"; that "the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living and economic self-sufficiency for such individuals"; and that "the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous."  42 U.S.C. § 12101(a).

9

35.    The ADA provides, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation." 42 USC § 12182.

36.    Plaintiff is a qualified individual with a disability as defined in the Rehabilitation Act and in the Americans with Disabilities Act of 1990.

37.     Bayside Marin Treatment Center is a public accommodation within the meaning of Title III of the ADA.  42 U.S.C. § 12181(7)(F).

38.    The ADA prohibits, among other types of discrimination, "failure to make reasonable modifications in policies, practices or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities."  42 U.S.C. § 12182(b)(2)(A)(ii).

39.    Under the "2010 Revised ADA Requirements: Service Animals," as published by the United States Department of Justice, and distributed by the DOJ's Civil Rights Division, Disability Rights Section, "Generally, title II and title III entities must permit service animals to accompany people with disabilities in all areas where members of the public are allowed to go." ADA 2010 Revised Requirements, www.ada.gov/service -animals-2010.htm  Further,

**Under the ADA, State and local governments, businesses, and nonprofit organizations that serve the public generally must allow service animals to accompany people with disabilities in all areas of the facility where the public is normally allowed to go.**

*Ibid.*, emphasis in original.

40.    Defendant has a policy and practice of denying access to patients with service animals.

41.    On information and belief, as of the date of Plaintiff's most recent visit to Bayside Marin Treatment Center on or about December 29, 2023 through January 2. 2024, Defendant continues to deny full and equal access to Plaintiff and to discriminate against Plaintiff on the basis of his disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of Defendant's premises,

in violation of the ADA.

42.    In passing the Americans with Disabilities Act of 1990 (hereinafter "ADA"), Congress stated as its purpose:

It is the purpose of this Act

(1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;

(3) to ensure that the Federal Government plays a central role in enforcing the standards established in this Act on behalf of individuals with disabilities; and

(4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 USC § 12101(b).

43.    As part of the ADA, Congress passed "Title III - Public Accommodations and Services Operated by Private Entities" (42 USC § 12181 *et seq.*).  The subject property and facility is one of the "private entities" which are considered "public accommodations" for purposes of this title, which includes but is not limited to any "professional office of a health care provider, hospital, or other service establishment." 42 USC § 12181(7)(F).

44.    The ADA states that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation." 42 U.S.C. § 12182.  The specific prohibitions against discrimination include, but are not limited to the following:

§ 12182(b)(1)(A)(ii): "Participation in Unequal Benefit. - It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals."

§ 12182(b)(2)(A)(ii): "a failure to make reasonable modifications in policies, practices, or

11

procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities...;"

§ 12182(b)(2)(A)(iii): "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied service, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services...;"

§ 12182(b)(2)(A)(iv): "a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities... where such removal is readily achievable;"

§ 12182(b)(2)(A)(v): "where an entity can demonstrate that the removal of a barrier under clause (iv) is not readily achievable, a failure to make such goods, services, facilities, privileges, advantages, or accommodations available through alternative methods if such methods are readily achievable."

The acts and omissions of Defendant set forth herein were in violation of Plaintiff's rights under the ADA and the regulations promulgated thereunder, 28 C.F.R. Part 36 *et seq*.

45.     The removal of each of the policy barriers complained of by Plaintiff as hereinabove alleged, were at all times herein mentioned "readily achievable" under the standards of sections 12181 and 12182 of the ADA.  As noted hereinabove, removal of each and every one of the policy barriers complained of herein were already required under California law.  In the event that removal of any barrier is found to be "not readily achievable," Defendant still violated the ADA, per section 12182(b)(2)(A)(v) by failing to provide all goods, services, privileges, advantages and accommodations through alternative methods that were "readily achievable."

46.     On information and belief, as of the dates of Plaintiff's encounters at the premises and as of the filing of this Complaint, Defendant's actions, policies, and physical premises have denied and continue to deny full and equal access to Plaintiff and to other disabled persons who work with service dogs, which violates Plaintiff's right to full and equal access and which discriminates against Plaintiff on the basis of his disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations, in violation of 42 U.S.C. sections 12182 and 12183 of the ADA.

47.     Defendant's actions continue to deny Plaintiff's rights to full and equal access by

1  deterring Plaintiff from patronizing Bayside Marin Treatment Center and discriminated and

2  continue to discriminate against him on the basis of his disabilities, thus wrongfully denying to

3  Plaintiff the full and equal enjoyment of Defendant's goods, services, facilities, privileges,

4  advantages and accommodations, in violation of section 12182 of the ADA.  42 U.S.C. § 12182.

5       48.     Pursuant to the Americans with Disabilities Act, 42 U.S.C. sections 12188 *et seq.,*

6  Plaintiff is entitled to the remedies and procedures set forth in section 204(a) of the Civil Rights

7  Act of 1964, 42 USC 2000(a)-3(a), as Plaintiff is being subjected to discrimination on the basis of

8  his disabilities in violation of sections 12182 and 12183 of this title.  On information and belief,

9  Defendant has continued to violate the law and deny the rights of Plaintiff and other disabled

10  persons to "full and equal" access to this public accommodation since on or before Plaintiff's

11  encounters.  Pursuant to section 12188(a)(2)

12      [i]n cases of violations of § 12182(b)(2)(A)(iv) and § 12183(a)... injunctive relief

13  shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this title.  Where

14  appropriate, injunctive relief shall also include requiring the provision of an auxiliary aid or service, modification of a policy, or provision of alternative methods, to the extent required by this title.

15

16       49.     Plaintiff seeks relief pursuant to remedies set forth in section 204(a) of the Civil

17  Rights Act of 1964 (42 USC 2000(a)-3(a)), and pursuant to Federal Regulations adopted to

18  implement the Americans with Disabilities Act of 1990.  Plaintiff is a qualified disabled person

19  for purposes of section 12188(a) of the ADA who is being subjected to discrimination on the

20  basis of disability in violation of Title III and who has reasonable grounds for believing he will be

21  subjected to such discrimination each time that he may use the property and premises, or attempt

22  to patronize Bayside Marin Treatment Center, in light of Defendant's policy barriers.

23      WHEREFORE, Plaintiff prays for relief as hereinafter stated.

24  **SECOND CAUSE OF ACTION:**
**VIOLATION OF CALIFORNIA LAW INCLUDING: THE UNRUH ACT, CIVIL**

25  **CODE SECTIONS 51 AND 52, AND THE AMERICANS WITH DISABILITIES ACT AS INCORPORATED**

26  **BY CIVIL CODE SECTION 51(f)**

27       50.     Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein,

28  the allegations contained in Paragraphs 1 through 49 of this Complaint and incorporates them

1  herein as if separately re-pleaded.

2      51.     At all times relevant to this action, the Unruh Civil Rights Act, California Civil

3  Code § 51(b), provided that:

4      All persons within the jurisdiction of this state are free and equal, and no matter
       what their sex, race, color, religion, ancestry, national origin, disability, or medical
5      condition are entitled to the full and equal accommodations, advantages, facilities,
       privileges, or services in all business establishments of every kind whatsoever.
6

7      52.     California Civil Code section 52 provides that the discrimination by Defendant

8  against Plaintiff on the basis of his disability constitutes a violation of the general anti-

9  discrimination provisions of sections 51 and 52.

10     53.     Each of Defendant's discriminatory acts or omissions constitutes a separate and

11  distinct violation of California Civil Code section 52, which provides that:

12     Whoever denies, aids or incites a denial, or makes any discrimination or distinction
       contrary to section 51, 51.5, or 51.6 is liable for each and every offense for the
13     actual damages, and any amount that may be determined by a jury, or a court sitting
       without a jury, up to a maximum of three times the amount of actual damage but in
14     no case less than four thousand dollars ($4,000), and any attorney's fees that may
       be determined by the court in addition thereto, suffered by any person denied the
15     rights provided in Section 51, 51.5, or 51.6.

16     54.     Any violation of the Americans with Disabilities Act of 1990 constitutes a

17  violation of California Civil Code section 51(f), thus independently justifying an award of

18  damages and injunctive relief pursuant to California law, including Civil Code section 52.  Per

19  Civil Code section 51(f), "A violation of the right of any individual under the Americans with

20  Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section."

21     55.     The actions and omissions of Defendant as herein alleged constitute a denial of

22  access to and use of the described public facilities by disabled persons who use service dogs

23  within the meaning of California Civil Code sections 51 and 52.  As a proximate result of

24  Defendant's actions and omissions, Defendant has discriminated against Plaintiff in violation of

25  Civil Code sections 51 and 52, and is responsible for statutory, compensatory and treble damages

26  to Plaintiff, according to proof.

27     56.     **FEES AND COSTS:**  As a result of Defendant's acts, omissions and conduct,

28  Plaintiff has been required to incur attorney fees, litigation expenses and costs as provided by

statute in order to enforce Plaintiff's rights and to enforce provisions of law protecting access for disabled persons and prohibiting discrimination against disabled persons.  Plaintiff therefore seeks recovery of all reasonable attorney fees, litigation expenses and costs pursuant to the provisions of California Civil Code sections 51 and 52.  Additionally, Plaintiff's lawsuit is intended to require that Defendant make its facilities and policies accessible to all disabled members of the public, justifying "public interest" attorney fees, litigation expenses and costs pursuant to the provisions of California Code of Civil Procedure section 1021.5 and other applicable law.

57.     Plaintiff suffered damages as above-described as a result of Defendant's violations.

WHEREFORE, Plaintiff prays for relief as hereinafter stated.

**THIRD CAUSE OF ACTION:**
**DAMAGES AND INJUNCTIVE RELIEF**
**FOR DENIAL OF FULL AND EQUAL ACCESS TO PUBLIC FACILITIES  IN A**
**PUBLIC ACCOMMODATION**
**(Civil Code §§ 54 *et seq.*)**

58.     Plaintiff re-pleads and incorporates by reference, as if fully set forth hereafter, the factual allegations contained in Paragraphs 1 through 57 of this Complaint and all paragraphs of the third cause of action, as plead infra, incorporates them herein as if separately re-pleaded.

59.     Under the California Disabled Persons Act (CDPA), people with disabilities are entitled to the "full and free use of . . . public buildings, . . . public facilities, and other public places."  Civil Code § 54(a).

60.     Civil Code section 54.1(a)(1) further guarantees the right of "full and equal access" by persons with disabilities to "accommodations, advantages, facilities, medical facilities, including hospitals, clinics, and physicians' offices . . .  or other places to which the general public is invited."  Civil Code § 54.1(c) also specifies that, "individuals with a disability and persons authorized to train service dogs for individuals with a disability, may take dogs, for the purpose of training them as guide dogs, signal dogs, or service dogs in any of the places specified in subdivisions (a) and (b)."

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

61.     Civil Code section 54.2(a) specifically protects the right of "every individual with a disability" "to be accompanied by a guide dog, signal dog, or service dog, especially trained for the purpose, in any of the places specified in Section 54.1."

62.     Civil Code section 54.3(b) makes liable "Any person or persons, firm or corporation who denies or interferes with admittance to or enjoyment of the public facilities as specified in Sections 54 and 54.1 or otherwise interferes with the rights of an individual with a disability under Sections 54, 54.1 and 54.2." This section also specifies that, "'[I]nterfere,' for purposes of this section, includes, but is not limited to, preventing or causing the prevention of a guide dog, signal dog, or service dog from carrying out its functions in assisting a disabled person."

63.     Defendant is also in violation of California Penal Code section 365.5(b) which states:

> No blind person, deaf person, or disabled person and his or her specially trained guide dog, signal dog, or service dog shall be denied admittance to accommodations, advantages, facilities, medical facilities, including hospitals, clinics, and physicians' offices, telephone facilities, adoption agencies, private schools, hotels, lodging places, places of public accommodation, amusement or resort, and other places to which the general public is invited within this state because of that guide dog, signal dog, or service dog.

64.     Bayside Marin Treatment Center is a public accommodation within the meaning of the CDPA. On information and belief, Defendant is the owner, operator, lessor or lessee of the public accommodation.

65.     Defendant made the decision to knowingly and willfully exclude Plaintiff and his service dog from its public accommodation and thereby deny Plaintiff his right of entrance into its place of business with his service dog. As a result of that decision Plaintiff has faced the continuing discrimination of being barred from entering this public accommodation and place of business based upon Defendant's illegal prohibition of his legally protected use of his service dog. Plaintiff has continued to suffer denial of access to these facilities, and faces the prospect of unpleasant and discriminatory treatment should he attempt to return to these facilities. Plaintiff is unable to return to Bayside Marin Treatment Center until he receives the protection of this Court's injunctive relief, and he has continued to suffer discrimination on a daily basis since

January 2, 2024, all to his statutory damages pursuant to California Civil Code §§ 54.1, 54.2, and 54.3 and California Penal Code section 365.5.

66. **INJUNCTIVE RELIEF:** Plaintiff seeks injunctive relief to prohibit the acts and omissions of Defendant as complained of herein which are continuing on a day-to-day basis and which have the effect of wrongfully excluding Plaintiff and other members of the public who are disabled, who require the assistance of service animals, from full and equal access to these public facilities. Such acts and omissions are the cause of humiliation and mental and emotional suffering of Plaintiff in that these actions continue to treat Plaintiff as an inferior and second-class citizen and serve to discriminate against him on the sole basis that he is a person with disabilities who requires the assistance of a service animal.

67. Plaintiff wishes to return to patronize Bayside Marin Treatment Center if he is in need of addiction recovery services in the future but is deterred from returning to use these facilities, because the lack of access and the significant policy barriers will foreseeably cause him further difficulty, discomfort and embarrassment, and Plaintiff is unable, so long as such acts and omissions of Defendant continues, to achieve equal access to and use of these public facilities. Therefore, Plaintiff cannot return to patronize Bayside Marin Treatment Center and its facilities and is deterred from further patronage until these facilities are made properly accessible for disabled persons, including Plaintiff and other disabled individuals who require the assistance of a service animal.

68. The acts of Defendant has proximately caused and will continue to cause irreparable injury to Plaintiff if not enjoined by this Court. Plaintiff seeks injunctive relief as to Defendant's inaccessible policies. As to the Defendant that currently owns, operates, and/or leases (from or to) the subject premises, Plaintiff seeks preliminary and permanent injunctive relief to enjoin and eliminate the discriminatory practices that deny full and equal access for disabled persons, and seeks an award of reasonable statutory attorney fees, litigation expenses and costs.

69. Wherefore Plaintiff asks this Court to preliminarily and permanently enjoin any continuing refusal by Defendant to grant full and equal access to Plaintiff in the ways complained

17

of and to require Defendant to comply forthwith with the applicable statutory requirements relating to access for disabled persons.  Such injunctive relief is provided by California Civil Code sections 54.1, 54.2 and 55, and other laws.  Plaintiff further requests that the Court award damages pursuant to Civil Code section 54.3 and other law and attorney fees, litigation expenses, and costs pursuant to Civil Code sections 54.3 and 55, Code of Civil Procedure section 1021.5 and other law, all as hereinafter prayed for.

70. **DAMAGES:**  As a result of the denial of full and equal access to the described facilities and due to the acts and omissions of Defendant in owning, operating, leasing, constructing, altering, and/or maintaining the subject facilities, Plaintiff has suffered a violation of his civil rights, including but not limited to rights under Civil Code sections 54 and 54.1, and has suffered difficulty, discomfort and embarrassment, and physical, mental and emotional personal injuries, all to his damages per Civil Code section 54.3, including general and statutory damages, as hereinafter stated.  Defendant's actions and omissions to act constitute discrimination against Plaintiff on the basis that he was and is disabled and unable, because of the policy barriers created and/or maintained by the Defendant in violation of the subject laws, to use the public facilities on a full and equal basis as other persons.  The violations have deterred Plaintiff from returning to attempt to patronize Bayside Marin Treatment and will continue to cause him damages each day these barriers to access and policy barriers continue to be present.

71. Although it is not necessary for Plaintiff to prove wrongful intent in order to show a violation of California Civil Code sections 54 and 54.1 or of Title III of the ADA (*see Donald v. Café Royale*, 218 Cal. App. 3d 168 (1990)), Defendant's behavior was intentional. Defendant was aware and/or was made aware of its duties to refrain from establishing discriminatory policies against disabled persons, prior to the filing of this complaint.  Defendant's establishment of its discriminatory policy to deny and restrict entry to persons with service dogs, and its implementation of such a discriminatory policy against Plaintiff, indicate actual and implied malice toward Plaintiff and conscious disregard for his rights and safety.

72. **FEES AND COSTS:**  As a result of Defendant's acts, omissions, and conduct, Plaintiff has been required to incur attorney fees, litigation expenses, and costs as provided by

18

statute, in order to enforce Plaintiff's rights and to enforce provisions of the law protecting access

for disabled persons and prohibiting discrimination against disabled persons.  Plaintiff therefore

seeks recovery of all reasonable attorney fees, litigation expenses, and costs, pursuant to the

provisions of Civil Code sections 54.3 and 55.  Additionally, Plaintiff's lawsuit is intended to

require that Defendant make its facilities accessible to all disabled members of the public,

justifying "public interest" attorney fees, litigation expenses and costs pursuant to the provisions

of California Code of Civil Procedure section 1021.5 and other applicable law.

73.     Plaintiff suffered damages as above described as a result of Defendant's violations.

Damages are ongoing based on his deterrence from returning to Bayside Marin Treatment Center.

WHEREFORE, Plaintiff prays for relief as hereinafter stated.

## **PRAYER**

Plaintiff has no adequate remedy at law to redress the wrongs suffered as set forth in this

Complaint.  Plaintiff has suffered and will continue to suffer irreparable injury as a result of the

unlawful acts, omissions, policies, and practices of the Defendant as alleged herein, unless

Plaintiff is granted the relief he requests.  Plaintiff and Defendant have an actual controversy and

opposing legal positions as to Defendant's violations of the laws of the United States and the

State of California. The need for relief is critical because the rights at issue are paramount under

the laws of the United States and the State of California.

WHEREFORE, Plaintiff Justin Hammond prays for judgment and the following specific

relief against Defendant:

1.     An order enjoining Defendant, its agents, officials, employees, and all persons

acting in concert with them:

a.   From continuing the unlawful acts, conditions, and practices described in this

Complaint;

b.   To modify its policies and practices to accommodate service dog users in

conformity with federal and state law, and to advise Plaintiff that his service dog

will not be excluded should he desire to enter and use the services of Bayside

Marin Treatment Center;

19

c.  That the Court issue preliminary and permanent injunction directing Defendant as current owners, operators, lessors, and/or lessees and/or their agents of the subject property and premises to modify the above described property, premises, policies and related policies and practices to provide full and equal access to all persons, including persons with disabilities; and issue a preliminary and permanent injunction pursuant to ADA section 12188(a) and state law directing Defendant to provide facilities usable by Plaintiff and similarly situated persons with disabilities, and which provide full and equal access, as required by law, and to maintain such accessible facilities once they are provided and to train Defendant's employees and agents in how to recognize disabled persons and accommodate their rights and needs;

d.  An order retaining jurisdiction of this case until Defendant have fully complied with the orders of this Court, and there is a reasonable assurance that Defendant will continue to comply in the future absent continuing jurisdiction;

2.  An award to Plaintiff of statutory, actual, general, treble, and punitive damages in amounts within the jurisdiction of the Court, all according to proof;

3.  An award of civil penalty as against Defendant under California Penal Code § 365.5(c);

4.  An award to Plaintiff pursuant to 42 U.S.C. § 12205, 29 U.S.C. § 794a, California Civil Code §§ 52 and 54.3, California Code of Civil Procedure § 1021.5, and as otherwise permitted by law, of the costs of this suit and reasonable attorneys' fees and litigation expenses;

5.  An award of prejudgment interest pursuant to Civil Code § 3291;

6.  Interest on monetary awards as permitted by law; and

7.  Grant such other and further relief as this Court may deem just and proper.

Date: January 25, 2024                                    REIN & CLEFTON

                                                              */s/ Aaron M. Clefton*
By AARON M. CLEFTON, Esq.
Attorneys for Plaintiff
JUSTIN HAMMOND

1

## JURY DEMAND

2

Plaintiff hereby demands a trial by jury for all claims for which a jury is permitted.

3

Date: January 25, 2024                                REIN & CLEFTON

4

_____/s/ Aaron M. Clefton_

5

By AARON M. CLEFTON, Esq.

Attorneys for Plaintiff

6

JUSTIN HAMMOND

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES